Lawrence J. Hires, Plaintiff-Counter Defendant-Appellee, and M. C. Slater, Inc., a Corporation, Defendant-Appellee, v. Dale S. Price and Agricultural Transportation Association, Defendants-Appellants, and Freeman Vaughn, Defendant-Counter Plaintiff-Appellant.

Gen. No. 10,716.

Fourth District.

September 26, 1966.

Costigan & Wollrab, of Bloomington (William F. Costigan, of counsel), for appellant.

Smith & Satter, of Pontiac (John G. Satter, Jr., of counsel), for appellee.

CRAVEN, J.

This suit was originally brought by Lawrence J. Hires, as plaintiff, against Dale S. Price, Freeman Vaughn and Agricultural Transportation Association. The plaintiff was the operator of a tractor-trailer unit that collided

with another tractor-trailer unit, driven by the defendant Price, at the intersection of Routes 66 and 47 in Livingston County, Illinois. The unit driven by the defendant Price was owned by the defendant Freeman Vaughn and under lease to the defendant Agricultural Transportation Association. The defendant Vaughn counterclaimed for property damage against Hires and M. C. Slater, Inc., who had the Hires' unit under lease. The jury found for the plaintiff Hires against all the defendants and also in favor of all counterdefendants on the property damage claim of the defendant-counterplaintiff, Freeman Vaughn.

The defendant contends as error:

1. That plaintiff was guilty of contributory negligence as a matter of law and that the trial court should have granted judgment notwithstanding the verdict;
2. That ch 95½, sec 198b, Ill Rev Stats 1963, requiring certain prescribed rest periods for operators of second-class motor vehicles, is not applicable to this case;
3. That the plaintiff's attorney engaged in prejudicial conduct concerning certain inadmissible testimony and argument to the jury.

The undisputed facts show that the plaintiff was approaching the intersection, traveling west on Route 66, and that the defendant was approaching the intersection, traveling south on Route 47. There were traffic signals at the intersection. The weather was clear and the intersection had no obstructions to the view of approaching vehicles. All other material facts are in dispute.

In substance, the plaintiff produced the following witnesses and testimony.

**Dale Price:** The defendant was called as an adverse witness under section 60 of the Practice Act. He testified that he was traveling south on Route 47 when he struck

a truck driven by the plaintiff, Lawrence Hires, at the intersection of Route 47 and Route 66. He stated he first saw the plaintiff's vehicle 200–300 feet from the intersection as it was traveling west on Route 66. Although the witness could not estimate the speed of the plaintiff's truck, he stated his truck was traveling between 30 and 35 mph. At this time, the witness stated the light for traffic on Route 47 was red and that it later changed to amber and then green when he was about 100 feet away from the intersection. He recalled the collision as occurring in the northwest quadrant of the intersection.

The defendant also testified he kept a log of his trip to and from Dalbo, Minnesota, and related his hours of travel and rest.

**Freeman Vaughn:** The codefendant and owner of the tractor-trailer unit was also called as a section 60 witness. He stated he owned the tractor-trailer driven by Dale Price and that it was leased to the Agricultural Transportation Association. He testified that he went to the scene of the accident, but did not talk to John Tomachevsky and did not contact him by telephone.

**John Tomachevsky:** This witness testified that he was traveling behind three trucks on Route 66, approaching the intersection from the east. He stated that he moved into the passing lane approximately 175–180 feet from the intersection. The witness stated he saw the accident occur. At the time of the collision the light was green for traffic on Route 66. He further testified that a small truck, traveling in the opposite direction on Route 66, was attempting a left turn through approaching traffic.

The witness then attempted to testify that he had been contacted by telephone several times by the defendant Freeman Vaughn. He stated that he was asked to change his story and that all the calls were threatening. The testimony was objected to and finally stricken because of an inability of the witness to identify the voice of the alleged telephone caller. The court then ordered a

10-minute recess. Upon resumption of proceedings, John Tomachevsky was recalled and the defendant was asked the following question and made the following answer:

"Q. Mr. Tomachevsky, during the last fifteen minutes have you had occasion to hear the voice of this man sitting with the pencil in his hand, Mr. Freeman Vaughn?

"A. I just did when he put his cigar down. It was the same voice I heard over the telephone."

The court held this foundation to be insufficient and excluded further testimony concerning the telephone calls.

**Suzanne Zuschlag:** This witness identified herself as the sister of John Tomachevsky and attempted to testify to similar threatening calls she had received in her brother's behalf. Her testimony was also excluded for lack of foundation in identifying the caller.

**Lawrence Hires:** The plaintiff testified that the traffic lights changed from red to green as he approached within 200–300 feet of the intersection. At this time he had shifted into low gear and was traveling about 30 mph. He then began to pick up speed until he noticed a truck, traveling east on Route 66, move into the intersection, blocking both lanes of eastbound traffic. The "green" truck then began to move north across the intersection, at which time the plaintiff applied his brakes. He further testified that he was within a few feet of the intersection when he applied his brakes and that he had not looked to his right or seen the defendant's truck prior to the collision.

**Milo Olson:** The investigating state trooper testified that the sequence of lights at the intersection is green— to yellow—to red—and red to green. He stated, on cross-examination, that the plaintiff, Mr. Hires, told him at the hospital that the traffic signal for Route 66 was yellow and that the defendant, Mr. Price, told him the traffic signal for Route 47 was green.

The defendant produced the following evidence:

**Al Fritz:** The witness testified that he was driving his truck on Route 47, going north. He stated that he stopped for a red light at the intersection of Routes 47 and 66. He then testified that he started to cross the intersection as the light changed to green. He stated that he saw the plaintiff's truck approaching from the east on Route 66. The witness stated that the light was still green for traffic on Route 66 when the accident occurred.

**Freeman Vaughn:** The defendant was called as a witness to testify as to the damage done his vehicle and as to his loss as a result of the collision.

█ The defendant argues that the plaintiff was guilty of contributory negligence as a matter of law and prays that this court reverse the jury's verdict and *enter judgment for the defendant*. He argues this point and expressly relies upon the case of Ferno v. Brown, 14 Ill App2d 507, 145 NE2d 91 (1957), which is similar on its facts to the case at bar. The Appellate Court, in reversing a judgment for the plaintiff and remanding for a new trial, stated at 511, 512 (145 NE2d at 93):

> "In the instant case plaintiff's evidence fails to show that he was in the exercise of reasonable care, and affirmatively shows that he was guilty of negligence which contributed to cause the collision and resultant damage to his car. It is our duty to reverse a judgment if, from a consideration of the record, we conclude that the judgment appealed from is against the manifest weight of the evidence . . . (citing cases)."

█ While a new trial may be granted if a judgment is against the manifest weight of the evidence, we know of no other case holding a court of review to be empowered to enter judgment without remandment solely by deter-

mining that the verdict was against the manifest weight of the evidence.

As early as 1924, the Illinois Supreme Court clearly defined when a case may be reversed without remandment without infringement upon the constitutional right of trial by jury. In Mirich v. T. J. Forschner Contracting Co., 312 Ill 343, 355, 356 (143 NE 846), the court said:

> ". . . The Supreme Court of the United States said in the early case of Parsons v. Bedford, 3 Pet 433 [32 Pet (3 US) 433, 7 L Ed 732], that the right of trial by jury was dear to the American people; that one of the strongest objections to the adoption of the constitution was the want of a provision securing the right of trial by jury in civil cases, and that as soon as the constitution was adopted that right was secured by the adoption of the seventh amendment. Much has been said in decisions of courts and by law writers on the importance and sacredness of the right of trial by jury; but that is recognized by every American and needs no discussion here. . . .
>
> "It must, we think, be accepted as settled law that a trial court has no power, when a jury is not waived, to determine the weight and preponderance of conflicting evidence introduced to establish or disprove the facts. The decisions are numerous, and are uniform, that the trial judge is never authorized to take a case from the jury where there is legitimate evidence tending to prove the cause of action. When a motion is made to direct a verdict it is not the province of the trial court to weigh and determine the preponderance of the testimony. This court has held in many cases that such a motion raises a question of law, and the function of the trial court is limited strictly to determining whether there is or is not evidence legally tending to prove the fact

alleged. If there is such evidence the case must be submitted to the jury even though the greater weight of the evidence may seem to the court to be on the side of the other party. It has always been recognized that for a trial court to weigh and determine conflicting evidence and direct the jury what verdict to render would be a direct violation of the constitutional right of trial by jury. The parties are entitled, under the constitution, to have the facts passed on by a jury." . . .

Recently, the wisdom of this rule was discussed in both a majority and dissenting opinion in Mesich v. Austin, 70 Ill App2d 334, 217 NE2d 574 (1966).

■ The prerogative of weighing the evidence, suggested in this appeal, is not ours. The law is clear, and its constitutional and historical origins cannot be outweighed by contemporary considerations. Balancing and determining the manifest weight of the evidence, as related to issues of negligence and contributory negligence, are duties of the trier of fact.

"It is well settled that where there is uncertainty as to the existence of either negligence or *contributory* negligence, the question is not one of law, but of fact, and to be settled by a jury; and this, whether the uncertainty arises from a conflict in the testimony, or because the facts being undisputed, fair minded men will honestly draw different conclusions from them." Richmond & D. R. Co. v. Powers, 149 US 43, 45. (Emphasis added.)

■ This is a close case on its facts and a jury verdict for the defendant would also be sustainable. We cannot say that this verdict is against the manifest weight of the evidence.

Where, however, as here, there is a closely balanced case, we must determine whether any of the other alleged

210

errors properly preserved are so prejudicial as to require a new trial.

▪ In this connection, we are concerned with the repeated attempts by plaintiff's counsel, improperly, to introduce prejudicial testimony to the jury—this in connection with the effort to establish alleged threats to the witness Tomachevsky. Neither this witness nor his sister, Mrs. Zuschlag, could make a proper identification. The substance of the calls and the stated identity of the caller are purely hearsay, unless this matter can be established by admissions of a party. No identification of the caller's voice could be made and, at the time of the trial, the court properly held the then attempted identification to be insufficient.

▪ The Illinois rule is liberal enough to allow identification of the voice after the telephone call. People v. Nichols, 378 Ill 487, 38 NE2d 766 (1942). This rule, however, has not been extended to include a disavowal of recognition followed by a claim of recognition based upon fragmented utterances as here involved.

Despite the court's ruling on the exclusion of this evidence, plaintiff's counsel, by persistent attempts, was able to convey to the jury both the substance of the call and the identity of the caller. This was first done by calling the defendant as a section 60 witness and requiring him to deny making such a call. The subsequent testimony by the witness Tomachevsky, even though stricken, was extremely damaging to the defendant. If a proper foundation were laid it would have properly detracted from the credibility of the defendant by impeaching his earlier testimony through a prior inconsistent statement and also as a damaging admission. However, the damaging effect of this testimony was felt despite the court's ruling.

▪ Where persistent attempts are made, in the presence of the jury, to introduce the substance of testi-

211

mony which has properly been ruled inadmissible, error is committed. Bishop v. Chicago Junction Ry., 289 Ill 63, 124 NE 312 (1919) ; Miller v. Chicago Transit Authority, 3 Ill App2d 223, 121 NE2d 348 (1954). Where the evidence is closely balanced or merely preponderates in one party's favor, such error requires a new trial. Edwards v. Hill-Thomas Lime & Cement Co., 378 Ill 180, 37 NE2d 801 (1941).

In view of this conclusion, it is unnecessary to consider other errors assigned by the appellant. For the reasons stated, this cause must be reversed and remanded to the circuit court of Livingston County for a new trial.

Reversed and remanded for a new trial.

TRAPP, P. J. and SMITH, J., concur.